UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY STONE; JACLYN STONE,

        Plaintiffs,

  -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; COMMISSIONER BRIAN FISCHER;
CAPE VINCENT CORRECTIONAL FACILITY;
OFFICER JASON WHITE; OFFICER EAMER;
OFFICER MARTIN; OFFICER BLACK; SERGEANT
ERNEST MUSTIZER; CAPTAIN JEREMY KNAPP;
DEPUTY SUPERINTENDENT BRIAN McAULIFFE;
SERGEANT MATTHEW GRANT; DONNA M.
KIRKLAND as Exectrix of the Estate of NORMAN
KIRLAND; OFFICER PRATT; MARC MILLER;
LIEUTENANT ROBYNN GRAVES; LIEUTENANT
NORMAN JONES; JOHN DOE(S) and JANE DOE(S),

        Defendants.
_____

**SECOND AMENDED COMPLAINT**

7:15-CV-00097 (LEK/ATB)

JURY TRIAL DEMANDED

    Plaintiffs Anthony Stone and Jaclyn Stone (formerly Jaclyn Watson), by and through their attorneys, Bosman Law Firm, L.L.C., for their complaint against Defendants, respectfully alleges as follows:

    1.    This is a complaint under 42 U.S.C. §§ 1981 and 1983; Title VI of the Civil Rights Act of 1964; the Constitution of the United States; and the Constitution of the State of New York, to remedy violations of the rights of the Plaintiffs for injuries and harm caused by the Defendants in their individual and official capacities as the employer and as the agents of the State of New York.

JURISDICTION AND VENUE

2. This action is brought, in part, pursuant to 42 U.S.C. §§ 1981, 1983, and the First and Fourteenth Amendments to the United States Constitution. This action is for monetary damages as well as for declaratory, injunctive and equitable relief to redress the deprivation of the Plaintiffs' rights secured to them by the Constitution and laws of the United States and the State of New York. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1367(a) and the aforementioned statutory and Constitutional provisions.

3. Plaintiff invokes the original and supplemental jurisdiction of this Court to decide claims arising under Federal and New York State law including, but not limited to, claims that Defendants committed unlawful discriminatory and retaliatory practices by denying Plaintiffs equal terms, conditions and privileges because of their race and/or association with members of a particular race; and claims that Defendants violated Plaintiffs' right to equal treatment and protection of the laws.

4. This Court has supplemental jurisdiction over Plaintiffs' New York State law claims including their claims under the New York State Constitution.

5. Venue is proper in the Northern District of New York in that the unlawful practices alleged herein were committed in whole or part in the Northern District.

PARTIES

6. Plaintiff Anthony Stone, at all times relevant to this complaint, is an African-American male citizen of the United States and a resident of the State of New Jersey. At all times relevant to this complaint, Plaintiff Anthony Stone was incarcerated in the Cape Vincent Correctional Facility in Cape Vincent, NY. Plaintiff Anthony Stone is the husband (formerly fiancé) of Plaintiff Jaclyn Stone.

7. Plaintiff Jaclyn Stone, at all times relevant to this complaint, is a white female citizen

of the United States and a resident of the State of New Jersey. Plaintiff Jaclyn Stone is the wife (formerly fiancee) of Plaintiff Anthony Stone.

8. Defendant New York State Department of Corrections and Community Supervision, at all times relevant to this complaint, is a state department with the State of New York and a recipient of federal funding.

9. Defendant Brian Fischer, at all times relevant to this complaint, was the Commissioner of the New York State Department of Corrections and Community Supervision.

10. Defendant Cape Vincent Correctional Facility, at all times relevant, is a correctional facility owned and run by the State of New York and a recipient of federal funding.

11. Defendant Officer Jason R. White, at all times relevant to this complaint, is an employee of the State of New York and a correctional officer at the Cape Vincent Correctional Facility.

12. Defendant Officer Eamer, at all times relevant to this complaint, is an employee of the State of New York and a correctional officer at the Cape Vincent Correctional Facility.

13. Defendant Officer Martin, at all times relevant to this complaint, is an employee of the State of New York and a correctional officer at the Cape Vincent Correctional Facility.

14. Defendant Officer Black, at all times relevant to this complaint, is an employee of the State of New York and a correctional officer at the Cape Vincent Correctional Facility.

15. Defendant Sergeant Ernest K. Mustizer, at all times relevant to this complaint, is an employee of the State of New York and a Sergeant and supervisor at the Cape Vincent Correctional Facility.

16. Defendant Captain Jeremy A. Knapp, at all times relevant to this complaint, is an employee of the State of New York and a Captain and supervisor at the Cape Vincent Correctional

Facility.

17.     Defendant Deputy Superintendent Brian F. McAuliffe, at all times relevant to this complaint, is an employee of the State of New York and a deputy officer at Cape Vincent Correctional Facility.

18.     Defendant Sergeant Matthew M. Grant, at all times relevant to this complaint, is an employee of the State of New York and a Sergeant and supervisor at the Cape Vincent Correctional Facility.

19.     Defendant Donna M. Kirkland is Executrix of the Estate of Defendant Officer Norman J. Kirkland, who at all times relevant to this complaint, was an employee of the State of New York and a correctional officer at the Cape Vincent Correctional Facility.

20.     Defendant Marc Miller, at all times relevant to this complaint, is an employee of the State of New York and the deputy chief of investigations for New York State Department of Corrections.

21.     Defendant Lieutenant Robynn C. Graves, at all times relevant to this complaint, is an employee of the State of New York and a lieutenant at the Cape Vincent Correctional Facility.

22.     Defendant Lieutenant Norman R. Jones, at all times relevant to this complaint, is an employee of the State of New York and a lieutenant at the Cape Vincent Correctional Facility.

23.     Defendants John Doe(s) and Jane Doe(s) are individuals not yet known to the Plaintiffs.  Once their identities are ascertained, the names of those individuals will be substituted in place of the John Doe(s) and/or Jane Doe(s) designation(s).

## FACTS

24.     Starting on or about January 26, 2012, Plaintiff Anthony Stone was incarcerated in the Cape Vincent Correction Facility in Cape Vincent, New York.

25. Shortly thereafter, Plaintiff Jaclyn Stone began weekly visitations to see Plaintiff Anthony Stone.

26. On or about January 28 2012, Plaintiffs began to be harassed and mistreated by Defendants, and treated differently than non-interracial couples.

27. On or about mid February, 2012, Plaintiff Anthony Stone was transported to Middlesex County, New Jersey, to stand trial for an open matter, which was dismissed. Plaintiff Anthony Stone was then transported back to the Cape Vincent Correctional Facility on or about July 2012, at which point the harassment and mistreatment resumed.

28. On instances too numerous to count, Plaintiff Anthony Stone was called "nigger" by Defendant Officers and Plaintiff Jaclyn Stone a "nigger lover".

29. On one occasion, one of the Defendant officers stated to Plaintiff Jaclyn Stone, "You can have anyone you want. Why be with someone who's ghetto?"

30. Non-interracial couples were allowed to kiss and hug throughout visitation periods, but Plaintiffs were told that they were only allowed to kiss and hug once at the beginning of the visitation and once at the end.

31. On one occasion, when entering the correctional facility, Defendant White told Plaintiff Jaclyn Stone that she needed to "pull your dress up over your stomach and chest. Pull your dress up or I'm ending your visit." Plaintiff was wearing a skirt and top, and pulling her skirt up would have revealed her thighs and possibly her groin area. Soon thereafter, Defendant Grant arrived, and Plaintiff Jaclyn Stone asked to speak with him. Defendant Grant stated that Plaintiff Jaclyn Stone "was a beautiful woman with a nice body". Defendant Grant stated that because of Plaintiff's curves, she was going to have "these problems with these officers" because they "do not like that [she] deals with a black guy."

32.     On another occasion, Defendant Eamer saw Plaintiff Jaclyn Stone with her hand on the arm of Plaintiff Anthony Stone in the middle of a visitation. Defendant Eamer said to Plaintiffs "You know the rules." and "On my watch, you don't touch her." At that same time and room, non-interracial couples were embracing and kissing in the middle of their visitations.

33.     One another occasion, Plaintiffs wanted to get their pictures taken, which was permitted if they bought a token at the facility, which could be redeemed for one picture. When Plaintiffs purchased a token, Defendant Kirkland refused to allow them to take the picture, and told them "I should make you fucking eat it." referring to the token.

34.     In the visitors area, there is a red line which inmates are not supposed to cross. There is also a microwave which is located on the other side of the red line which inmates are regularly permitted to use. When Plaintiffs attempted to use the microwave, Defendant Black told them they could not use the microwave because it was over the red line. At that same time, a non-interracial couple were kissing while standing on the wrong side of the red line.

35.     When Plaintiff Anthony Stone approached Defendant Black for clarification, Defendant Black then stated "Don't talk to me. I said stay behind the red line."

36.     Plaintiff Anthony Stone then approached another officer present for clarification of the rules. At this point, Defendant Black stated to Plaintiff Anthony Stone "Hey fucker. Yeah you fucker. Come over here. Why you talking to [the other officer]? Just like your kind, daddy tells you one thing, you gotta run to mommy. I could send you to Canada, then see how you can see her then."

37.     Later on that same visitation, Defendant Black stated to Plaintiff Anthony Stone that he was going to "fix" him.

38.     During another visitation, Defendant Black assigned Plaintiffs to sit at a table where there was a cloud of nats flying around and on the food. Plaintiff Jaclyn Stone asked to be moved

to a different table, and Defendant Black stated "where I sit you is where I sit you. If you don't like it, don't come here. File a grievance, see how far that gets you."

39.     Plaintiff Jaclyn Stone also received, on a regular basis, invasive searches of her person by Defendant Officers John Does, while individuals who were not in interracial relationships were not placed under such scrutiny. Plaintiff also received regular drug screenings from Officer John Does wherein she was swabbed on her hands, jean pockets, coat pockets, the tops of her shoes, the tops of her thighs, and in her purse. Officers select the visitors who are to be screened, and these invasive searches by Officers John Doe began after Plaintiffs complained to the Superintendent and the Department of Corrections office in Albany.

40.     Plaintiff Jaclyn Stone was also made by Defendant Officer John Doe, on one occasion, to hold her bra after a search and was not permitted to put her bra back on, even after repeated requests, and was told "No, you can go in there just like that." Plaintiff Jaclyn Stone's nipples were visible through her shirt without her bra. Defendant Officer John Doe also suggested he would "like to help her with that.", suggesting he could put Plaintiff's bra on her. While waiting to enter the visitors room, Defendant Mustizer entered and asked Plaintiff why she was still holding her bra. After Plaintiff explained what happened, Plaintiff was allowed to put her bra back on, but Defendant Mustizer did not remove the officers responsible or take any other action.

41.     When Plaintiff Jaclyn Stone complained, she was told "Stay with your own kind, and this wouldn't happen."

42.     On or about October 28, 2012, Plaintiff Anthony Stone wrote a letter to the Commissioner complaining of the discriminatory harassment and mistreatment of both Plaintiffs. On or around the same date, Plaintiff Jaclyn Stone also wrote a letter to the Commissioner complaining of same.

43. In or about November, 2012, Plaintiff Anthony Stone was denied medical care, which resulted in the Plaintiff fainting. Both Plaintiffs complained to the correctional facility, and soon thereafter, a "special" cube search was conducted on Plaintiff Anthony Stone. During that search, several permitted personal items were removed by correctional facility staff and not returned to Plaintiff Anthony Stone. When asked by Plaintiff Anthony Stone why these items were removed, the officer conducting the search responded that she was told to do so by her superiors.

44. Plaintiffs wrote letters complaining about Plaintiffs' treatment at the hands of the Defendants to the Commissioner and Mr. Carl Koenigsmann, and Plaintiff Jaclyn Stone faxed same to the Inspector General's office, on or about November 21, 2012.

45. On or about December 10, 2012, Plaintiff Anthony Stone received a letter telling him that the correctional facility had been notified of his complaint.

46. On or about December 11, 2012, at 1:00 pm, Defendant Jones interviewed Plaintiff Anthony Stone regarding the November 21, 2012 letter. Plaintiff Anthony Stone informed Defendant Jones that he was fearful of retaliation, and Defendant Jones assured Plaintiff Anthony Stone that there would be no retaliation, and that the conversation was being recorded. Plaintiff Anthony Stone observed Defendant Jones press "record" on the audio recorder. Plaintiff Anthony Stone discussed all matters of harassment with Defendant Jones. Afterwards, Plaintiff Anthony Stone called Plaintiff Jaclyn Stone, and told her what had happened. The phone call was recorded by the facility.

47. Later that same day, on or about December 11, 2012, at approximately 6 pm, Plaintiff's housing "cube" (a one man housing cell) was searched by Defendant Officers Pratt and Martin.

48. During the search, Plaintiff Anthony Stone observed Defendant Martin take an object out of his pocket and drop it to the floor. Defendant Martin then picked up the object and stated that

it had fallen from one of Plaintiff Anthony Stone's possessions.

49. Officer Martin revealed the object to be a packet of drugs.

50. Other inmates witnessed Defendant Martin plant the drugs and one inmate relayed the information to his wife, who contacted Plaintiff Jaclyn Stone. Upon information and belief, this same inmate was disciplined shortly thereafter.

51. Plaintiff Jaclyn Stone contacted Defendant Knapp and McAuliffe, asking that they review Defendant Jones recording with Plaintiff Anthony Stone, and also interview the inmates who were witnesses to Defendant Martin planting the drugs. Plaintiff Jaclyn Stone never received a response.

52. Plaintiff Jaclyn Stone was asked to take books from Plaintiff Anthony Stone's cube, and when she went to retrieve them, she entered into a conversation with Defendant Graves, wherein Defendant Graves stated "I don't do well with visitors who accuse my officers who work with great integrity of doing things that they don't do and I do not deal well with inmates who lie on my officers and say that they did things that they did not do. They will be dealt with accordingly." Defendant Graves was very threatening and hostile towards Plaintiff throughout the conversation. Upon information and belief, Defendant Graves participated in the investigation and/or discipline of Plaintiff Anthony Stone.

53. Plaintiff Anthony Stone was charged with a Tier 3 charge. At Plaintiff's hearing, Hearing Officer John Doe did not permit Plaintiff Anthony Stone to call witnesses or present evidence to support his defense that the drugs had been planted in his cell. Plaintiff Anthony Stone requested that Defendant Jones produce the recording of his investigation, but Defendant Jones denied that any such recording existed.

54. Plaintiff Anthony Stone was then taken to the "box", a housing cell approximately

4 feet by 8 feet, also known as SHU confinement. Plaintiff Anthony Stone was kept in the box for 91 days, wherein he was given 1 hour of recreation time in a 5 foot by 5 foot cage, per day. Plaintiff was not permitted any visitors or access to phone, loss of packages, and was given a recommended loss of good time, which eliminated Plaintiff's eligibility for the 6 months limited time credit allowance. Due to this, Plaintiff was also prevented from completing his bachelor's degree program. Plaintiff was mandated to take the ASAT (an Alcohol and substance abuse training program).

55. Plaintiff Jaclyn Stone was told by Defendants that she was not permitted to visit Plaintiff Anthony Stone during this time period. Plaintiff Jaclyn Stone later learned that there was no legal basis or justification permitting Defendants to deny her access to her fiancee, Plaintiff Anthony Stone.

56. For two years following Plaintiff Anthony Stone's Tier 3 charge, Plaintiffs continuously mailed and faxed letters to the Commissioners office and the Inspector General's office. Multiple grievances were opened against the Cape Vincent Correctional Facility, but the grievances were never responded to.

57. Upon completion of Plaintiff Anthony Stone's SHU confinement on or about March 12, 2013, he was transferred to a medium security facility outside of the Watertown HUB.

58. On occasions too numerous to mention since the harassment and discrimination began, both Plaintiffs sent letters to Commissioner Brian Fischer, asking that the foregoing incidents be investigated, and upon information and belief, no action was taken.

59. On or about May 21, 2014, the Inspector General's office removed Plaintiff Anthony Stone from ASAT and restored his loss of good time, without explanation, which allowed Plaintiff Anthony Stone to be released on or about July 2, 2014.

60. As a direct and proximate result of Defendants' actions, Plaintiffs have been injured

and damaged:

 (a) Plaintiff Anthony Stone suffers from claustrophobia, panic attacks, fear, anxiety, and post traumatic stress disorder.

 (b) Plaintiffs suffer stress, tension, headaches, stomach aches, sleeplessness, nervousness, fear and dread, extreme anxiety, embarrassment, humiliation, degradation, depression, insomnia, anger, family discord and dysfunction and pain;

 (c) Plaintiffs suffer severe emotional distress, mental anxiety, depression, psychological trauma, inconvenience, and loss of enjoyment of life;

 (d) Plaintiffs have been subjected to damage to their good names, humiliation, indignity, and shame;

 (e) Plaintiffs have been caused to incur legal fees and expenses and will incur additional legal fees in the future, to protect Plaintiffs' rights and interests from the wrongful and unlawful actions of the Defendants herein;

 (f) Plaintiffs have suffered deprivation of their property and liberty and otherwise suffered deprivation of their human, civil, and Constitutional rights in violation of the laws and Constitutions of the United States and the State of New York;

 (g) Plaintiffs have been otherwise damaged.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. §§ 1981, 1983**
**AND THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT**

61. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 60 above.

62. By engaging in the foregoing conduct, Defendants have discriminated against Plaintiffs on the basis of race and association with individuals of a different race, in violation of 42 U.S.C. § 1981 and the Equal Protection Clause of the 14th Amendment in violation of 42 U.S.C. § 1983.

63. Plaintiffs suffered injury and harm as a result of Defendants' conduct and are entitled

to compensation therefor.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 AND THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT

64.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 63 above.

65.     By engaging in the foregoing conduct, Defendants have discriminated against Plaintiff Jaclyn Stone on the basis of gender, in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the 14th Amendment.

66.     Plaintiff suffered injury and harm as a result of Defendants' conduct and is entitled to compensation therefor.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR RETALIATION IN VIOLATION OF 42 U.S.C. § 1981 AND THE FIRST AMENDMENT

67.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 66 above.

68.     By engaging in the foregoing conduct, Defendants have injured and harmed Plaintiffs in retaliation for complaints made by the Plaintiffs regarding racial and gender discrimination, in violation of 42 U.S.C. §§ 1981, 1983 and the First Amendment of the Untied States Constitution.

69.     Plaintiffs suffered injury and harm as a result of Defendants' conduct and are entitled to compensation therefor.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. § 1983

70.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 69 above.

71. By engaging in the foregoing conduct, Defendants have sexually harassed Plaintiff Jaclyn Stone in violation of 42 U.S.C. § 1983.

72. Plaintiff suffered injury and harm as a result of Defendants' conduct and is entitled to compensation therefor.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR VIOLATION OF DUE PROCESS IN VIOLATION OF 42 U.S.C. § 1983

73. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 72 above.

74. By engaging in the foregoing conduct, Defendants have violated Plaintiff Anthony Stone's due process rights and rights of liberty.

75. In particular, the planting of the drugs in Plaintiff Anthony Stone's cell and the subsequent denial of Plaintiff's request to present evidence that the drugs had been planted violate Plaintiff's due process rights.

76. Plaintiff suffered injury and harm as a result of Defendants' conduct and is entitled to compensation therefor.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983

77. Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 76 above.

78. Upon information and belief, Defendants acted in concert and agreement to deprive Plaintiffs of their constitutional rights and/or retaliate against the Plaintiffs in response to the Plaintiffs engaging in their constitutional rights.

79. Plaintiffs suffered injury and harm as a result of Defendants' conduct and are entitled to compensation therefor.

**AS AND FOR A SEVENTH CAUSE OF ACTION
FOR VIOLATION OF PLAINTIFFS' RIGHTS UNDER
THE NEW YORK STATE CONSTITUTION**

80.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 79 above.

81.     By engaging in the foregoing conduct, Defendants have violated Plaintiffs' rights under the New York State Constitution, Article I.

82.     Plaintiffs suffered injury and harm as a result of Defendants' conduct and are entitled to compensation therefor.

**AS AND FOR AN EIGHTH CAUSE OF ACTION
FOR VIOLATION OF PLAINTIFFS' RIGHTS UNDER
TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**

83.     Plaintiffs repeat and re-allege each and every allegation set forth in paragraphs 1 through 82 above.

84.     Defendants NYS Department of Corrections and Community Supervision and Cape Vincent Correctional Facility are recipients of federal funding.

85.     Defendants did intentionally discriminate, and/or have policies, practices, and/or procedures which have the effect of discrimination, on the basis of race, color, and/or association with race and/or color.

86.     Plaintiffs suffered injury and harm as a result of Defendants' conduct and/or policies, practices, and/or procedures, and are entitled to compensation therefor.

**WHEREFORE**, Plaintiffs respectfully request judgment against the Defendants as follows:

(a)     judgment awarding Plaintiff compensatory damages in an amount not less than $2,000,000.00 (Two Million Dollars);

(b)     judgment awarding Plaintiff punitive damages in an amount not less than

$1,000,000.00 (One Million Dollars);

(c) for each Cause of Action, granting the following injunctive relief:

1. Restraining the Defendants from engaging in further discriminatory and/or retaliatory treatment;

2. Require the Defendants to review and correct all unconstitutional and discriminatory and retaliatory treatment and conduct within the Cape Vincent Correctional Facility;

3. Mandate training and educational programs for employees about discrimination and retaliation;

(d) interest on all amounts due;

(e) attorney's fees under 42 U.S.C. Section 1988;

(f) declaratory relief that the Defendants have violated the Plaintiffs' rights under the law;

(g) granting such other and further relief as the court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial of all claims herein.

Dated: October 7, 2016
at Rome, New York

s/ Daniel Flynn, Esq.
A.J. Bosman, Esq.
Bosman Law Firm, L.L.C.
Attorneys for Plaintiff
Office and Post Office Address
6599 Martin Street
Rome, New York 13440
Telephone: (315) 336-9130